UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES M.,

                 Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:23-CV-01187 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Charles M. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted, and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on June 13, 2020.  (Dkt. 5 at 52-53).[1]  In his applications, Plaintiff alleged disability beginning on March 1, 2018, due to "skin lupus, [losing] hair, [and] hard to get up after being seated."  (*Id.* at 54-55, 69-70).  Plaintiff's applications were initially denied on February 9, 2021.  (*Id.* at 127-46).  A telephone hearing was held before administrative law judge ("ALJ") Mark Solomon on June 28, 2022.  (*Id.* at 41-51).  Plaintiff was represented by counsel at the hearing, but Plaintiff did not appear or testify at the hearing.  (*Id*. at 23-24, 43-44).  On September 13, 2022, the ALJ issued an unfavorable decision.  (*Id.* at 20-33).  Plaintiff requested Appeals Council review; his request was denied on September 19, 2023, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 6-12).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. §§ 404.1520(d), 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. §§ 404.1520(f), 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §§ 404.1520(g), 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920.  Initially, the ALJ determined that Plaintiff meets the insured status requirements of the Act through September 30, 2025.  (Dkt. 5 at 26).  At step one, the ALJ determined that Plaintiff engaged in substantial gainful work activity from January 1, 2019, through December 31, 2019, but that there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity.  (*Id*. at 26-27).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of systemic lupus erythematosus (SLE).  (*Id.* at 27).  To the extent Plaintiff alleged that he suffered from a mental impairment, the ALJ concluded that this was not a medically determinable impairment.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 28).  The ALJ particularly considered the criteria of Listing 14.02 in reaching his conclusion.  (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that:

> he can sit for six hours, and stand and/or walk for a total of six hours, each out of a typical eight-hour work day.  He can lift and carry 20 pounds occasionally and 10 pounds frequently, and can occasionally climb and crawl.  The claimant must avoid working at heights or with hazardous machinery, and cannot have extreme exposure to the sun.

- 5 -

(*Id.*).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 32).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of marker; cleaner, housekeeper; charge account clerk; and document preparer.  (*Id.* at 32-33).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 33).

## II.    The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, challenging the ALJ's assessment of the opinion offered by consultative examiner Nikita Dave, M.D. Specifically, Plaintiff argues that the ALJ found that the opinion offered by Dr. Dave was vague, and the ALJ failed to clarify the opinion.  (Dkt. 6-1 at 1, 6-8).  In response, the Commissioner argues that substantial evidence supports the disability determination, and the ALJ was not required to re-contact Dr. Dave for clarification.  (Dkt. 8-1 at 6-12).

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  While an ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision," *id*., an ALJ is not a medical professional, and therefore he "is not qualified to assess a claimant's RFC on the basis of bare medical findings," *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation and citation omitted).  However, at bottom, "[a]n

RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ, as the Commissioner's regulations make clear." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (finding it was proper for the ALJ "pursuant to his statutory authority . . . [to] consider[ ] the medical and other evidence in the record in its totality to reach an RFC determination").

With respect to the ALJ's evaluation of opinion evidence, under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id*. at §§ 404.1520c(c), 416.920c(c).  The most important factors are supportability and consistency.  *Id*. at §§ 404.1520c(a), 416.920c(a).  The ALJ must articulate his consideration of the

medical opinion evidence, including how persuasive he finds the medical opinions in the case record.  *Id*. at §§ 404.1520c(b), 416.920c(b).

Dr. Dave performed an internal medicine examination on January 21, 2021.  (Dkt. 5 at 495-99).  Dr. Dave noted that Plaintiff appeared to be in no acute distress, and he did not need any assistance.  (*Id*. at 496).  Plaintiff's gait was slow, but he could walk on his heels and toes without difficulty, and his stance was normal.  (*Id*.).  A musculoskeletal examination showed full flexion, extension, and range of motion, and Plaintiff's joints were stable and nontender.  (*Id*. at 497).  Dr. Dave noted spasm of the lumbar paraspinals.  (*Id*.).  Plaintiff had full range of motion in the upper and lower extremities, but Dr. Dave noted that this was "all done with some degree of reluctance."  (*Id*.).  Plaintiff had no sensory deficits and full strength, no evident muscle atrophy, and his hand and finger dexterity were intact, with grip strength at 5/5 bilaterally.  (*Id*. at 497-98).  Dr. Dave opined that Plaintiff had "moderate limitations for activities requiring greater than mild to moderate sustained exertion and endurance through the day," and also that Plaintiff should "avoid extremes of sunlight due to discoid lupus."  (*Id*. at 498).

The ALJ discussed Dr. Dave's opinion in the written determination (*id*. at 30), including by considering the supportability and consistency of the opinion with other evidence in the record.  The ALJ found that Dr. Dave's opinion was "not fully persuasive," including because Plaintiff's treatment records did not indicate any gait abnormality, the abnormalities identified by Dr. Dave's own examination of Plaintiff were mild, and Plaintiff's x-rays were negative.  (*Id*.).  The ALJ further noted that Dr. Dave's phrasing of "sustained exertion" was vague and not coupled with functional limitations, and was based

on Plaintiff's self-reports rather than his objective presentation on examination. (*Id.*). The ALJ also noted that it was not clear whether Dr. Dave was aware that Plaintiff rode a bicycle for transportation and ran for exercise, which were consistent with Plaintiff's benign appearance in the clinical setting. *Id.* Finally, the ALJ found that the assessed limitation on sun exposure was reasonable, given Plaintiff's lupus. (*Id.*).

Plaintiff argues that the ALJ's assessment that a portion of Dr. Dave's opinion was "vague" required the ALJ to seek clarification of that opinion. The Court disagrees. It is clear from the written determination how the ALJ arrived at the assessed RFC for light work with additional limitations. Dr. Dave's use of the term "sustained exertion," although not accompanied by specific functional limitations, was not assessed in a vacuum—rather, Dr. Dave's opinion was accompanied by an in-person examination. *See, e.g., Susan B. v. Comm'r of Soc. Sec.*, 551 F. Supp. 3d 107, 119 (W.D.N.Y. 2021) (rejecting the plaintiff's argument that the consultative examiner's use of a certain term was "overly vague," because the opinion was supported by a physical examination and an assessment, which was consistent with the record as a whole); *see also Richardson v. Comm'r of Soc. Sec.*, No. 1:16-CV-00658-MAT, 2018 WL 3633199, at *3 (W.D.N.Y. July 30, 2018) (although the doctor's source statement was "relatively brief," her opinion was "not impermissibly vague" where "she performed a thorough and complete examination of Plaintiff"). "[T]he determinative question is whether the conclusions were supported by examination results and the record as a whole." *Id.*

As explained above, Dr. Dave's physical examination findings were largely normal. Dr. Dave observed that Plaintiff appeared to be in no acute distress, had a normal stance,

used no assistive device, needed no help changing for the exam or getting on and off the examination table, and could rise from the chair without difficulty. (Dkt. 5 at 496). Further, Plaintiff had full musculoskeletal range of motion, no sensory deficits, full strength, and no muscle atrophy. (*Id*. at 497-98). Dr. Dave's largely normal physical examination, and the incorporation of her assessment that Plaintiff should avoid sun exposure, supports the RFC for light work with additional limitations.

Further, other evidence in the record supports the RFC and is consistent with Dr. Dave's physical examination. For example, the ALJ discussed that other medical records noted normal physical examinations. (*See, e.g., id*. at 29 ("At summer 2020 follow ups with primary care and rheumatology providers, [Plaintiff's] physical examinations remained significant only for skin lesions, with one isolated mention of tenderness in the hands, together with his typically normal range of motion, and no noted deficits to strength, sensation, gait, or coordination."); *id*. at 30 (in October 2020, "[n]o abnormalities were noted on his musculoskeletal examination and he did not have any complaints regarding pain or mobility."); *id*. (in July 2021, "[h]is physical examination confirmed his skin lesions and hyperpigmentation, but no musculoskeletal or neurological abnormalities.")). Although Plaintiff contends that he reported that he experienced limitations greater than those included in the RFC (*see* Dkt. 6-1 at 7 (arguing that Plaintiff reported increasing difficulty with exertion and reported shortness of breath)), the ALJ explained in the written determination that he did not find these complaints entirely credible (*see id*. at 31 ("As the record stands, the claimant complained of polyarthralgia, stiffness, fatigue, and weakness, but there is little to no evidence of range of motion loss, tenderness, gait impairment, or

strength deficits[.]"); *id*. ("[Plaintiff] described different abilities to different providers, but the cumulative record indicates that he can drive, take public transit, get around on a bicycle, run for exercise, cook, clean, shop, look after his children, and work part time.")). The ALJ ultimately concluded that "the objective longitudinal record is largely benign, and does not justify any further erosions to the claimant's residual functional capacity, which is consistent with the function by function analyses of record." (*Id*.).

Plaintiff argues that the ALJ should have re-contacted Dr. Dave to obtain clarification of her assessment. However, an ALJ is not required to re-contact a doctor for clarification, or to further develop the record, where the record before the ALJ is already adequate to determine whether the plaintiff is disabled. *See, e.g., Brogan-Dawley v. Astrue*, 484 F. App'x 632, 634 (2d Cir. 2012); *see also Calderon v. Colvin*, No. 5:15-CV-1021 (GTS), 2016 WL 7156555, at *7 (N.D.N.Y. Dec. 7, 2016) ("Because the record evidence was adequate to permit the ALJ to make a disability determination, the ALJ was not required to recontact Dr. Razzaq."). Here, the administrative record includes both medical opinion evidence and Plaintiff's treatment records. Further, Dr. Dave's assessment was accompanied by an in-person examination, the findings of which were consistent with other medical evidence in the record. Plaintiff has identified no other gaps in the record that call into question its completeness. Accordingly, the record before the ALJ was sufficient to decide on Plaintiff's case, and the ALJ was not required to seek clarification of Dr. Dave's opinion, or to make any further inquiry. Accordingly, Plaintiff is not entitled to remand on this basis.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.  The Clerk of Court is directed to enter judgment and to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  December 4, 2024
        Rochester, New York